# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

BANK OF PENSACOLA,

    Appellant,

v.                                               Case No. 3:07-cv-232/LAC

AMERICAN NATIONAL
INSURANCE COMPANY,

    Appellee.
_____/

## **O R D E R**

This matter is before the Court on appeal from the March 7, 2007, Order of the Bankruptcy Court (Doc.40) in Northern District of Florida Bankruptcy Case No. 06-30003. In that order, the Bankruptcy Court granted summary judgment in favor of Appellee American National Insurance Company ("ANICO"). Appellant Bank of Pensacola ("the Bank") challenges the Bankruptcy Court's finding that ANICO had no contractual duty to provide notice to the Bank that it had sent a notice of default to debtor/lessee Barnhill's Buffet, Inc., d/b/a Barnhill's Buffet d/b/a Aculpulco Fresh ("Barnhill's"), the failure of which deprived the Bank of the opportunity to cure the default. This Court has jurisdiction pursuant to 28 U.S.C. § 158(a)(1).

## I. STANDARD OF REVIEW

A district court reviewing the decision of its bankruptcy unit functions as an appellate court. *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990). Determinations of law are subject to *de novo* review, while findings of fact are subject to the clearly erroneous standard of review. *In re Williamson*, 15 F.3d 1037, 1038 (11th Cir. 1994) (citing Fed.R.Bankr.Proc. 8013 and *In re Club Associates*, 956 F.2d 1065, 1069 (11th Cir. 1992)). The district court, sitting as an appellate court, does not make independent factual findings. *Id.*

## II. BACKGROUND

Because the facts of this case are free from dispute and are set out fully in the Bankruptcy Court's order, they will be repeated only in summary fashion here. In 1980, ANICO leased property to Barnhill's upon which Barnhill's operated a restaurant. The ground lease agreement contained a provision permitting Barnhill's, with ANICO's consent, to finance its leasehold interest, and on December 29, 1999, the Bank and ANICO entered into an agreement allowing Barnhill to enter into a mortgage agreement with the Bank. On December 30, 1999, the following day, Barnhill's executed the mortgage agreement with the Bank in which it borrowed $560,000. On October 31, 2001, Barnhill's and the Bank amended the mortgage agreement, extending its term and increasing the amount borrowed.

During 2005, Barnhill's defaulted in its payments to ANICO, whereupon ANICO sent written notice of the default to Barnhill's but not to the Bank. After Barnhill's failed to cure

the default, ANICO filed an eviction action against Barnhill's in Escambia County Court, again giving no notice to Bank. In January 2006, Barnhill's filed a Chapter 11 Bankruptcy Petition, and subsequently the Bank filed the instant action in the Bankruptcy Court, seeking to void ANICO's termination of the ground lease agreement with Barnhill's because ANICO failed to comply with its alleged duty to provide notice of the default to the Bank. On March 7, 2007, the Bankruptcy Court granted summary judgment to ANICO, holding that ANICO did not breach any duty to provide notice to the Bank because it could not be shown that ANICO ever received a copy of the mortgage agreement between the Bank and Barnhill's. This appeal followed.

### III. REVIEW

The Bankruptcy Court found ANICO had no duty to provide notice of default to the Bank because the Bank failed to provide ANICO with a copy of the executed mortgage agreement between it and Barnhill's. The requirement for such was contained in Article XV of the ground lease agreement, which provides:

> Section 15.02. Notice to Mortgagee. If Tenant shall mortgage the leasehold estate created herein *and if the holder of said mortgage shall, within thirty (30) days after its execution, send to Landlord a true copy thereof,* together with written notice specifying the name and address of mortgagee, Landlord agrees that so long as such leasehold mortgage remains unsatisfied of record, or until written notice of satisfaction is given by the holders thereof to Landlord, the following provisions shall apply:

> (a) There shall be no mutual cancellation, surrender or modification of this lease without the prior written consent of the leasehold mortgagee;
> (b) Landlord will, upon serving Tenant with notice of any default, simultaneously serve a copy thereof upon the holder of said leasehold mortgage, and notice shall not be deemed to have been served upon Tenant unless Landlord shall simultaneously serve a copy of such notice upon the holder of such leasehold mortgage;
> . . .
> (d) Notwithstanding any provision in this lease to the contrary, should the Tenant be in default in the performance of any covenant, term, condition or obligation imposed upon Tenant under the terms of this lease, Landlord shall not elect to declare this lease in default and seek to terminate this lease without first giving written notice of such default to the leasehold mortgages at the address specified in the notice required under Section 15.04 and for defaults in the payment of the basic rent or additional rent, until the expiration of a period of fifteen (15) days after receipt of such written notice by the leasehold mortgagee or if the default is with respect to any covenant, term, condition or obligation of this lease . . . until the expiration of a period of thirty (30) days after receipt of such notice by the leasehold mortgagee. . . .

Doc. 1-7 at 2-3 (emphasis supplied).

While the Bank does not dispute that this agreement plainly required that it send ANICO a copy of the mortgage agreement as a precondition for ANICO to provide notice to the Bank of any default, the Bank claims that this agreement was superseded by the agreement it entered into with ANICO, which provides:

> 4. Article XV of said Ground Lease Agreement provides for terms and conditions under which Tenant shall have the right to borrow money and grant a security interest in the Ground Lease Agreement or assign

> or hypothecate the same and Landlord does hereby consent to Tenant mortgaging the Ground Lease Agreement or assigning or hypothecating the same to Lender.
>
> 5. Landlord agrees that in the event of default by Tenant, Landlord will allow Lender an additional cure period of ten (10) days after Tenant's default within which Lender shall have the right to cure said default. Tenant is not currently in default of the Ground Lease Agreement . . . . Landlord shall provide Lender with a copy of any default notice sent to Tenant at the address set forth above.
>
> 6. Landlord agrees that in the event Tenant defaults under the terms and conditions of its loan from Lender, Lender may "step into the shoes" of Tenant and take over the Ground Lease Agreement through foreclosure or assignment by Tenant, . . .
>
> 7. . . . The parties hereto agree that this Agreement may be attached to the leasehold mortgage and security agreement to be given by Tenant to Lender and the terms and conditions hereof shall be supplemental and in addition to the terms and provision of Article XV of the Ground Lease Agreement.
>
> . . .
>
> 9. This Agreement may not be waived or modified except by the signed written agreement of the parties hereto.

*Id.* at 3-4.

Furthermore, the Bank's attorney who negotiated of the Bank/ANICO agreement supplied an affidavit stating:

> The purpose of the [Bank/ANICO] Agreement was to create a binding contract between the Bank and ANICO separate and apart from the lease and it was never contemplated that the terms of the lease would govern any notice of default required to be sent to the Bank by ANICO; such notices would be governed by the Agreement.

Doc. 1-8 at 3.

Thus, the Bank argues that the Bank/ANICO agreement was the sole controlling document as far as the relevant notice provisions, and as such it contained no requirement

that the Bank provide a copy of the mortgage to ANICO as a pre-condition to ANICO's duty to provide notice to the Bank of the default.  However, this argument cannot defeat the clear intention of paragraph 7 of the Bank/ANICO agreement set out above, which states that "the terms and conditions hereof shall be supplemental and in addition to the terms and provision of Article XV of the Ground Lease Agreement."  As the Bankruptcy Court held, "where a writing expressly refers to and sufficiently describes another document, that other document, or so much of it as is referred to, is to be interpreted as part of the writing."  Doc. 1-7 at 6 (Quoting *OBS Co., Inc. V. Pace Constr. Corp.*, 558 So.2d 404, 406 (Fla. 1990) and citing *Jenkins v. Eckerd Corp.*, 913 So.2d 43, 51 (Fla. 1st DCA 2005)).  This court finds that the plain meaning of the Bank/ANICO agreement was for both agreements to govern the Bank's mortgage agreement.  While it is true, as the Bank contends, that the Bank/ANICO agreement contained its own requirement that ANICO provide the Bank with a copy of any default notice, and it did so without mention of any pre-conditional requirement that the Bank provide ANICO with a copy of the mortgage agreement, this alone does not serve to eliminate the pre-condition.  The Bank/ANICO agreement may have modified the manner or timing of ANICO's notice requirement, but it cannot eliminate the Bank's own properly referenced notice requirement simply by not mentioning it.[1]  This Court also finds that the Bank attorney's statement that the Bank/ANICO agreement was to be the sole writing on the

---

[1] The fact that the notice provision in the the Bank/ANICO agreement changed the deadline for ANICO's notice further evidences that the Bank/ANICO provision was meant to modify the notice provisions in the ground lease agreement in only certain respects and not *in totem*.  In other words, where the Bank/ANICO agreement sought to modify the ground lease agreement, it did so.

issue of notice, created as it was after the fact, can hardly override the plainly stated contract terms to the contrary. *See Whitley v. Roy*, 910 So.2d 381, 383 (Fla. 5th DCA 2005) (the plain language of a contract is the best evidence of intent of the parties).[2]

While the Bank admits it cannot show that it ever provided ANICO a copy of the mortgage agreement (and ANICO states that it is not in possession of a copy), the Bank asserts that ANICO nevertheless had actual or constructive notice of the execution of the mortgage agreement.

As the Bank points out, actual notice can either be express or implied. While express notice derives from the receipt of direct information, implied notice may be "inferred from the fact that the person had means of knowledge, which it was his duty to use and which he did not use . . . ." *Florida Masters Packing, Inc. v. Craig*, 739 So.2d 1288, 1290 (Fla. 4th DCA 1999) (quoting *Sapp v. Warner*, 105 Fla. 254, 254, 141 So.124, 127 (1932)).

The Bank argues that notice of the mortgage should be implied to ANICO because the Bank/ANICO agreement itself presaged the mortgage agreement's execution. The Bank points specifically to the statement in the Bank/ANICO agreement that the Bank "has agreed to make said loan [to Barnhill's] provided that the parties hereto enter into this Agreement." Doc 8 at 12. The Bank emphasizes that, at the time it entered into the agreement with ANICO, it was understood that the Bank fully contemplated and intended to enter into the

---

[2] To emphasize ANICO's familiarity and understanding of the terms of the Bank/ANICO agreement, the Bank notes that both it and ANICO actively negotiated the terms of the agreement, and made handwritten edits on the document. This of course also indicates a heightened awareness by the Bank and its attorney of the contract provisions cited herein.

mortgage agreement with Barnhill's, and in fact it did so the next day. Thus, the Bank contends that ANICO had implied notice of such.

As the Bankruptcy Court noted:

> However, knowledge that the Bank planned or intended to take a mortgage on the leasehold is not equivalent to actual knowledge that the Bank did in fact take a mortgage on the leasehold. There is no evidence in the record to show that ANICO knew that the mortgage was actually executed. Barnhill could have obtained alternative financing or decided not to obtain financing at all after the agreement between the Bank and ANICO was executed. As ANICO points out in its supplemental brief, this situation is exactly the reason for Article 15.02's requirement that an executed copy of the mortgage be sent to ANICO. The Court finds that ANICO did not have actual notice of the Bank's mortgage on the leasehold.

This Court agrees that the Bank's argument cannot overcome the fact that, both practically and legally, ANICO had no notice that the mortgage agreement was actually executed. The Bank's efforts to impute to ANICO knowledge of the Bank's, and even Barnhill's,[3] intentions to enter the mortgage does only that, signal their intentions. There was no certainty that the mortgage agreement would be subsequently consummated, and the vagaries of business negotiations being what they are, it would be imprudent to expect ANICO to make any assumptions in this regard. The Bank also suggests that ANICO had enough "implied notice" to create a duty for it to investigate further and find out whether the mortgage agreement was executed, but this ignores the fact that the duty to provide notice

---

[3] Other than the bare fact that the Bank/ANICO agreement was being drafted in anticipation of the mortgage agreement, there appears to be no direct evidence that the parties could have drawn on to form any conclusions about Barnhill's intentions.

and the prescribed method of notice (that is, by the Bank providing a copy of the executed mortgage) had already been assigned over to the Bank by the terms of the two agreements. It would fairly well defeat the purpose behind the Bank's duty of notice if ANICO were required in spite of it to "go around the Bank's back" and determine for itself whether the mortgage was executed.[4]

Furthermore, it should be emphasized that the Bank's argument of implied notice really only solves part of the equation as far as the requirement in the ground lease agreement. It is not simply notice of the execution of the mortgage agreement that triggered the need for ANICO to provide notice of default; also required is that the Bank provide ANICO with an actual copy of the mortgage agreement. While ANICO of course should be entitled to a copy of the document without having to explain the purpose for wanting to have the document on hand, it was evident to both the Bankruptcy Court and now to this court that the mortgage document would serve as a catalyst or reminder to ANICO that it should notify the Bank in the event of the default. Although this may amount to a somewhat technical reading of the contract language, the purpose and functionality of this particularized requirement is nonetheless apparent.

---

[4] The Bank contends that the Bankruptcy Court failed to give it a "favorable inference," as required under summary judgment standards, to find that ANICO had implied notice of the mortgage agreement. The Court finds that the Bank is entitled to the factual inference that ANICO understood the intentions of the Bank and Barnhill's at the time the Bank/ANICO agreement was being negotiated, but not to the legal inferences it seeks as far as the meaning or import of the agreements. *See Barco Holdings, LLC v. Terminal Inv. Corp.*, 967 So.2d 281, 294 (Fla. 3d DCA 2007); *Chessmasters, Inc. v. Chamoun*, 948 So.2d 985, 986 (Fla. 4th DCA 2007) (questions of contract interpretation are resolved as a matter of law).

Finally, the Bank contends that ANICO should be charged with constructive notice of the execution of the mortgage agreement because of the Bank's filings in the public records of Escambia County, Florida, where the leasehold is located. "Constructive notice is an inference of knowledge by operation of law, as under a recording statute. It is a fiction that is imputed by the law primarily for the promotion of sound policy." *Amjems, Inc. v. F.R. Orr Const. Co., Inc.*, 617 F.Supp. 273, 278 (S.D. Fla. 1985) (citations omitted). The Bank contends that ANICO should have checked these records at the time of the default to determine the status of the mortgage agreement. Again, this argument fails because ANICO had no actual or implied knowledge of the executed mortgage agreement to begin with. The Bank's argument boils down to the assertion that ANICO should have checked the public records as a matter of course, but as *Amjems* clearly holds, constructive notice is implied only as to creditors and purchasers, not to a property owner such as ANICO. *Id.*[5]

Accordingly, this Court finds that ANICO did not have notice, actual or constructive, that the mortgage agreement was executed, and consequently ANICO did not have a contractual duty to provide notice to the Bank of Barnhill's default.

---

[5] As with the original mortgage, the Bank was also unable to show that it had delivered a copy of the 2001 amended mortgage agreement to ANICO. Although this might serve as an additional precondition to ANICO's notice requirement that the Bank failed to satisfy (which the Bankruptcy Court indeed found), given the Court's ruling herein, it is not necessary for this issue to be resolved.

Therefore, the Court's ruling in this matter may be summarized as follows, and **IT IS HEREBY ORDERED:**

1. The March 7, 2007, Order of the Bankruptcy Court (Doc. 40) in Bankruptcy Case No. 06-30003 is hereby **AFFIRMED**.

2. The District Court Clerk is directed to close the district court file on this case and remand the case to the Bankruptcy Judge for further proceedings.

**ORDERED** on this 24th day of March, 2008.

                                        s/*L.A. Collier*
                                        Lacey A. Collier
                                    Senior United States District Judge